UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____
|
MELISSA WHITE, | Case No. 1:08-cv-734
|
    Plaintiff, | HONORABLE PAUL MALONEY
|
v. |
|
NORTHERN MICHIGAN HOSPITALS, INC., |
|
    Defendant. |
_____|

## <u>Order</u>
**Directing the Defendant to Support or Abandon its Exhaustion Defense**

Plaintiff Melissa White ("White") was employed as a Surgical Technologist for defendant Northern Michigan Hospitals, Inc. ("the hospital") in Petoskey, Michigan, from September 17, 2007 until her termination on December 19, 2007. *See* Ms. White's Complaint filed August 6, 2008 ("Comp") ¶¶ 6-7 and 17. In October 2007, White discovered that she was pregnant, and she notified the hospital; in response, White alleges, her supervisors subjected her to greater scrutiny and increasingly criticized her performance. A supervisor allegedly made comments to White regarding her pregnancy such as "you need to manage your pregnancy better." *See* Comp ¶¶ 9-11.

White requested and obtained a meeting with department manager Kathy English and her supervisor on December 12, 2007, where White told English that her supervisor's comments regarding her pregnancy made her feel "insecure" about her job. English and the supervisor questioned her regarding the quality of her work and her attendance, but failed to address her concerns regarding discriminatory treatment and remarks. Before the meeting, White had been required to meet with her supervisor once per week; after the meeting, she was required to meet with

him every day, even though other new employees had only weekly meetings. *See id.* ¶ 12.

White was late for work on December 19, 2007 due to pregnancy-related "morning sickness" and was called into a meeting with her supervisor to discuss her attendance and job performance. The supervisors said he had heard White was unhappy with her job and planned not to return to work after her maternity leave. They asked how much maternity leave White expected to take, and advised that she would be entitled to only six weeks. White responded that "she would take whatever time was necessary to care for her child after the birth", whereupon a supervisor called the Personnel Department and had them inform her that she would be entitled to only six weeks maternity leave. White's supervisor allegedly remarked that *she* had never missed work due to *her* pregnancy, and she fired White at the conclusion of the meeting. *See* Comp ¶¶ 13-17.

White asserts a Title VII pregnancy-discrimination claim, and pendent claims under Michigan statute. The hospital moves for summary judgment, and its opening brief contends that White's complaint must be dismissed because she failed to exhaust her administrative remedies, *see* MSJ at 11. White's opposition brief explains that she exhausted her administrative remedies on the Title VII pregnancy-discrimination claim:

> [footnote 8] While the Defendant cites the Plaintiff's deposition testimony in which she testified that she had voluntarily withdrawn her complaint with the EEOC and the MDCR, this is not correct . . . . While the Plaintiff withdrew her MDCR complaint, she did not withdraw her EEOC complaint. Further, Defendant's attempts to hold Plaintiff to a standard of legal knowledge and require a lay person to differentiate between the MDCR and the EEOC is simply an attempt to divert attention from the facts in this case, and cannot overcome the fact that Plaintiff did, in fact, receive a right to sue letter from the EEOC.
>
> [text] The Defendant's reliance on *Brannan v. Home Depot USA*, 255 F. Supp. 2d 762 (E.D. Mich. 2002), and *Dillard v. Inalfa Roof Systems*, 2006 U.S. Dist. Lexis 83128 (E.D. Mich. 2006) is misplaced. In the *Brannan* case, *supra*, five of the six plaintiffs admitted that they had never filed an administrative complaint with either the MDCR or the EEOC prior to initiating their claims based upon federal law.

> *Brannan* at 763. The sixth plaintiff filed a complaint with the MDCR, but voluntarily withdrew it. *Id.* There is no indication whatsoever that any of the plaintiffs in the *Brannan* case received a right to sue letter from the EEOC prior to initiating claims under Title VII, as Ms. White did. Similarly, in the *Dillard* case, *supra*, the plaintiff withdrew his EEOC complaint. *Dillard* at 23. Again, there is no indication that the plaintiff in the *Dillard* case received a right to sue letter from the EEOC. Thus, these cases are distinguishable.
>
> [text] Further, the Defendant's assertion that these cases represent the proposition that failing to provide the EEOC with the opportunity to investigate a claim necessarily bars a subsequent legal action, ignores the reality of EEOC claim processing. Ms. White's right to sue letter clearly indicates that "less than 180 days from the filing of this charge." (Ex 10) Thus, it was the EEOC itself that determined that it was unable to undertake a complete and thorough investigation of this claim and, therefore, the EEOC terminated the processing of Ms. White's charge. Certainly it would be grossly inequitable to hold Ms. White accountable for the EEOC's inability to timely process her charge
>
> [footnote 6] Indeed, the Sixth Circuit has recognized that "punishment for the EEOC's ignoring of its own regulations should not be thrust upon the plaintiff." *Huck v. Greenspan*, 2009 U.S. Dist. Lexis 2009 [sic] (E.D. Mich. 2009), citing *Nichols v. Muskingum College*, 318 F.3d 674 (6th Cir. 2003).
>
> [text] The Defendant attempts to argue that because Ms. White withdrew her complaint with the MDCR, she has failed to exhaust her administrative remedies. In effect, the Defendant is attempting to impose an administrative exhaustion requirement which simply doesn't exist. There simply is no requirement under ELCRA that a plaintiff must even file a complaint with the MDCR. Thus, withdrawing that complaint cannot possibly bar her claims.

White's Opp at 8-10 with nn. 5 and 6. The hospital filed a reply brief, but it did not address White's argument and evidence that she did properly exhaust her administrative remedies with regard to the Title VII claim and was not required to exhaust such remedies with regard to her state-law claims.[1]

---

[1] The hospital concedes the first three elements of a *prima facie* case of pregnancy discrimination: she was a member of the protected group (she was pregnant), qualified to work as a Surgical Technician, and suffered an adverse employment action (she was fired). But the hospital contends that White cannot satisfy the fourth element, i.e., she has not shown a genuine issue that the hospital treated her less favorably than any similarly situated pregnant woman. The hospital contends that even if White established a *prima facie* case, the hospital has articulated a lawful business reason for firing her and she has not shown a genuine issue as to whether that reason was

The court surmises that the hospital may have abandoned its failure-to-exhaust defense.

**ORDER**

**No later than Monday, August 24, 2009, the defendant SHALL FILE either:**

**(1)** a notice stating that it has abandoned the exhaustion defense, **or**

---

a pretext for illegal pregnancy discrimination. The hospital contends that:

(1) inquiring about a pregnant employee's due date and expected post-delivery leave time is not evidence of pregnancy discrimination, nor is it pregnancy discrimination to fire someone because she creates uncertainty about whether she intends to return to work after maternity leave and refuses to commit to returning, as an employer is entitled to plan and manage its personnel needs in advance, *see* MSJ at 13-15 (relying on *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737-38 (7th Cir. 1994) and *Casada v. Cox Med. Ctrs.*, 2006 WL 89840 (W.D. Mo. 2006) and *Jeffrey v. MET Logistics, Inc.*, 2009 WL 674349, *9 (N.D. Ill. 2009));

(2) White admitted that the hospital managers *wanted* her to keep working, specifically to return to work following maternity leave, and she admits she told the supervisors that she would take as long as she needed after the baby's birth, expressed concern about returning to work given that her military husband could be deployed overseas and her family/support group lived far away, and refused to give the assurance her supervisors sought at the final December 19 meeting that she could be relied upon to report to work on time and do her job or that she would later return to work, *see* MSJ at 15-16;

(3) Supervisor Rockwell's alleged statement that White needed to get her morning sickness under control is susceptible of more than one meaning, including an expression of frustration that White was unable to work full-time, *see* MSJ at 16-17;

(4) the fact that her supervisors had no specific plan to fire her at the beginning of the December 19, 2007 meeting but fired her effective immediately at the conclusion of the meeting, is not evidence of discrimination or pretext, *see* MSJ at 17;

(5) even assuming that English believed White quit at the end of the meeting and White believed that she had been fired, that is not evidence of pretext, *see* MSJ at 17-18 (relying on *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145 (7th Cir. 1996)).

The parties address White's state-law retaliation claim at Hospital's MSJ at 19-21, White's Opp at 21-24, and Hospital's Reply at 7-9.

**(2)** a supplemental reply brief, no longer than five pages, rebutting the plaintiff's argument that she exhausted her administrative remedies.

The cover, table of cases, and certificate of service shall not count against the page limit.

This is not a final and immediately appealable order.

It is so ordered this ___10th___ day of August 2009.

                                              /s/ Paul L. Maloney
                                              Honorable Paul L. Maloney
                                              Chief United States District Judge