UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA WHITE, | Case No. 1:08-cv-734

    Plaintiff, | Chief Judge Paul L. Maloney

v. |

NORTHERN MICHIGAN REGIONAL HOSPITAL, |

    Defendant. |

**OPINION and ORDER**

**Directing NMH to Respond to Plaintiff's Motion for Reconsideration**
(Dismissing the Title VII Claim for Failure to Exhaust Administrative Remedies)

Surgical technician Melissa White brought this pregnancy-discrimination action against her former employer, Northern Michigan Regional Hospital ("the hospital") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 200e(k). White also asserted pendent claims for sex and pregnancy discrimination and retaliation under Michigan's Elliott-Larsen Civil Rights Act. White began working for the hospital as an at-will employee in September 2007, subject to a probationary period during which she was not eligible for vacation or progressive discipline procedures. The parties agreed that White informed the hospital that she was pregnant on October 1, 2007, and her employment ended on December 19, 2007, towards the end of her probationary period. The hospital moved to dismiss on the ground that White failed to exhaust her administrative remedies. In the alternative, the hospital moved for summary judgment on the ground, *inter alia*, that White could

not show a genuine issue of material fact as to some of the elements of a *prima facie* case of pregnancy discrimination. After hearing oral argument in September 2009, the court dismissed the Title VII claim without prejudice for failure to exhaust administrative remedies, and declined supplemental jurisdiction over the state-law claims. *See White v. Northern Michigan Hospital*, 659 F. Supp.2d 858 (W.D. Mich. Sept. 11, 2009) (Maloney, C.J.).

**In the ruling which White seeks to reconsider, this court reasoned as follows with regard to the Title VII claim:**

> As the United States Supreme Court has declared,
>
>> In Title VII Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of . . . discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation.
>
> *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81 (1989) (citing 42 U.S.C. § 2000e-5(b)). Likewise, our Circuit emphasizes that "the purpose of Title VII's administrative scheme is 'to encourage reconciliation and arbitration of employee grievances prior to litigation.'" *Steiner v. Henderson*, 354 F.3d 432, 437 (6th Cir. 2003) (quoting *Morgan v. Washington Mfg. Co.*, 660 F.2d 710, 711 (6th Cir. 1981)). *See also Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 471 (6th Cir. 2008) ("The policy or purpose of the exhaustion requirement 'is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation.'") (quoting *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (citation omitted)); *EEOC v. Watkins v. Motor Lines, Inc.*, 463 F.3d 436, 439 (6th Cir. 2006) (referring to "the EEOc's conciliation efforts (required in ADA actions)") . . . ; *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) ("The purpose of this requirement is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate *conciliation procedures in an attempt to avoid litigation*.") (emphasis added) . . . .
>
> It is undisputed that White filed her Charge of Discrimination with the Michigan Department of Civil Rights ("MDCR") on February 15, 2008, attesting under oath, "I also want this charge filed with the EEOC." White and her counsel contacted the MDCR and requested withdrawal of the charge "because I will pursue the issues raised in my complaint in court," because on that date MDCR Rights Representative

Janet Dillard sent White a notice acknowledging that White had done so, and quoting White's exact language to that effect.

White alleged that she withdrew only her MDCR charge, without withdrawing her EEOC charge or terminating her participation in the EEOC process. The court rejects this interpretation of White's action as untenable. Along with the notice acknowledging White's request to withdraw her charge and proceed in court instead, the MDCR attached a form, entitled Information for the Charging Party - How to Obtain an EEOC Notice of Right to Sue, which clearly advised her, in pertinent part:

> *This means your charge of discrimination filed with the Michigan Department of Civil Rights (MDCR) and dually filed with the Equal Employment Opportunity Commission (EEOC) will be closed*, because your intent is to sue the respondent company in federal court.
>
> Notices of Right to Sue are issued by the EEOC.
>
> To receive your RTS:
>
> Sign a withdrawal form suppled by the MDCR. Your signature on the withdrawal form acknowledges your intent to close your case with the MDCR and to receive a Notice of Right to Sue from the EEOC.
>
> *MDCR will submit your withdrawal to the EEOC,* along with your request for a[n] RTS.
>
> *Your case will be closed with the EEOC when your RTS is issued.* This process usually takes two months or longer.

At oral argument, White's counsel emphasized that White had no authority or power to prevent the EEOC from continuing to investigate and, if it chose, to take action against the hospital in the enforcement of Title VII. The court agrees, of course, that a private party lacks statutory or regulatory authority to dictate whether the EEOC initiates or continues an investigation. *See Walker v. UPS, Inc.*, 240 F.3d 1268, 1273 (10th Cir. 2001) ("Private parties such as Walker do not have the power to take away EEOC's enforcement authority . . . .") (citing *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir. 1999) ("Significantly, an individual may not, in an effort to effectuate her own interests, take away the enforcement authority of the EEOC even if she wishes to withdraw her charge of discrimination."")).[1]

---

1

Even this may be too charitable towards White's position on how much the EEOC could do once she withdrew her charge. While the EEOC might investigate to some degree without White's

participation and cooperation, conciliation is another matter.  In turn, the EEOC might not be permitted to file an action to enforce Title VII against the hospital if the hospital was not afforded an opportunity to *conciliate* with White under the EEOC's auspices.  Our Circuit has quoted with approval the Commissioner's statement that "'*the Commission ordinarily may not sue or intervene in suits or issues on which it has not* found cause and *attempted conciliation*.'" *Jackson v. Richards Med. Co.*, 961 F.2d 575, 584 (6th Cir. 1992) (quoting 45 FED. REG. 48614, 48615 (July 21, 1980)).

*Accord EEOC v. Sherwood Med. Indus., Inc.*, 452 F. Supp. 678, 681 (M.D. Fla. 1978), where the court dismissed the EEOC's action to enforce Title VII's prohibitions on race and sex discrimination, stating,

> If the Commission is to seek relief in federal court it must be prepared to show that it has satisfied the jurisdictional prerequisites including submitting the matters in issue to conciliation.  It has not done so here and it therefore follows that suit on the sex discrimination claim was premature.

*Sherwood*, 452 F. Supp.2d at 681.  *See also*, *citing Sherwood*: **1st,** *EEOC v. IBEW*, 476 F. Supp. 341, 344-45 (D. Mass. 1979) ("Among the jurisdictional requirements of an EEOC-initiated enforcement action are . . . (2) inclusion of the defendant and the possibly discriminatory acts for which it is responsible in the reasonable[-]cause determination . . . and (3) efforts at informal settlement and conciliation prior to formal court action . . . . Of these three requirements, the most important is the attempt to conciliate . . . .") (citing 42 U.S.C. § 2000e-5(f)(1) and . . . *Allegheny Airlines*, 436 F. Supp. 1300, 1306 (W.D. Pa. 1977)); **5th,** . . . *HBH, Inc.*, 1999 WL 508403, *2 (E.D. La. July 19, 1999) ("Conciliation is . . . a condition precedent to the Commission's power to sue.  There is no exception under the statute.  * * * [F]ailure to conciliate is fatal to an action brought by the EEOC.") (citing . . *Magnolia Elec. Power Ass'n*, 635 F.2d 375, 378 (5th Cir. 1981)); **7th,** . . . *Warshawsky & Co.*, 1993 WL 303097, *14 (N.D. Ill. Apr. 15, 1993) ("[C]onditions precedent to suit will not have been met unless EEOC has exhausted the possibilities of conciliation with respect to each issue it seeks to litigate.") (citing . . . *Motorola, Inc.*, 468 F. Supp.2d 857, 859 (N.D. Ill. 1987)) . . . ; **8th,** . . . *Am. Home Prods. Corp.*, 165 F. Supp.2d 886, 908-14 (N.D. Iowa Sept. 13, 2001), *recon. denied*, 2001 WL 34008710 (Dec. 20, 2001); **9th,** . . . *Bruno's Restaurant, Inc.*, 1990 WL 300242 (S.D. Cal. Aug. 16, 1990) ("the Commission must make a genuine effort to conciliate with respect to each and every employment practice complained of.  * * * Accordingly, conciliation is a prerequisite to this action, and there's been insufficient proof established in Plaintiff's case that the requirement of conciliation on a pattern and practice policy was satisfied.  * * * So, the [employer's] motion [to dismiss title VII pregnancy-discrimination claims] must be granted on that basis."); **10th,** . . . *Gardner Mgmt. Group*, 2007 WL 1672820, *1 (W.D. Okla. June 5, 2007); **11th,** *Dinkins*. . . 133 F. Supp.2d 1237, 1246 (M.D. Ala. 2001) ("[T]he court finds that any ADA claim is barred.  * * * EEOC never attempted to conciliate this matter.  * * * Accordingly, the court finds that it has no jurisdiction over any ADA claims.") (citing *Stehle* . . . (D.S.C. 1994)); . . . . *Crown Liquors of Broward, Inc.*, 503 F. Supp. 330, 333 (S.D. Fla. 1980) ("The Commission's right to maintain suit is not without limitation, regardless of the scope of its investigation.  Thus, [it] may

But White's argument in this regard conveniently overlooks the fact that investigation is not the only major purpose of the administrative process. Nor is enforcement litigation (by the aggrieved employee or the EEOC) the only outcome contemplated by Congress. On the contrary, litigation from either source is decidedly *not* the outcome preferred by Congress, as our precedents make clear.

Rather, as our Circuit has emphasized, "'Voluntary compliance is Title VII's preferred method for promoting the goal of nondiscrimination; it is also the reason for the EEOC's existence.'" *Steiner*, 354 F.3d at 437 (quoting *St. John* . . . (9th Cir. 1981) and citing *Alexander* . . . 415 U.S. 36, 44 (1974) ("stating that '[c]ooperation and voluntary compliance" were selected by Congress as the preferred means of assuring equality of employment opportunities by eliminating discrimination, and '[t]o this end, Congress created the [EEOC]' and established a procedure by which the EEOC and cooperating local agencies would have an opportunity to settle disputes through conference and conciliation before the aggrieved party was allowed to file a lawsuit."); *see also Randolph v. Dep't of Youth Servs.*, 453 F.3d 724, 724, 731-32 (6th Cir. 2006) ("This requirement exists so that the EEOC will have an opportunity to convince the parties to enter into [a] *voluntary settlement, which is the preferred means of disposing of such claims*.") (citing *Parsons v. Yellow Freight Sys., Inc.*, 741 F.2d 871, 873 (6th Cir. 1984)) (emphasis added).

By unequivocally terminating her involvement in the EEOC administrative process, White thwarted "the EEOC's function as an efficient conciliator", which is "central to Title VII's statutory scheme." *Gavette v. Brady* . . . 1993 WL 384902, *2 (6th Cir. Sept. 28, 1993); *cf. Jackman v. NLRB*, 784 F.2d 759, 764 (6th Cir. 1986) (referring to "the generally accepted doctrine of promoting settlement agreements, which has been characterized as the 'lifeblood of the administrative process,' and is of the utmost importance to the administration of the Act." ) (citation omitted).

By definition, "conference" and "conciliation" are impossible when one of the parties indicates that she will no longer participate. *Cf., e.g., Shikles* . . . 426 F.3d 1304, 1311 (10th Cir. 2005) ("[W]e hold that a private sector employee must cooperate with the EEOC in order for the employee to exhaust his or her administrative remedies . . . ."); *Adair* . . . . 102 F. Supp.2d 1092, 1097 (S.D. Iowa 1999) (because employee failed to cooperate with state civil-rights commission's efforts after filing discrimination charge, she did not exhaust her administrative remedies . . . .

---

not sue on a complaint broader in scope than the results of its investigation as contained in its reasonable-cause determination. The determination of reasonable cause defines the framework for conciliation, and conciliation of all claims sought to be litigated must be attempted prior to suit thereon.") (internal citation omitted) (citing . . . *Pierce & Stevens*, 434 F. Supp. 1162 (W.D.N.Y. 1977)).

The administrative remedies which White short-circuited are part of a carefully designed, integrated framework which combines investigation, conference and conciliation, and lastly – only if it is unavoidable, *after* the other processes have been fully tried – litigation. Aggrieved persons cannot pick and choose which components of the system they will allow to operate. *Cf. Hines v. Widnall*, 334 F.3d 1253, 1259 (11th Cir. 2003) ("[T]he EEOC had not yet reached a final determination on the merits of Appellants' claim. After the EEOC certified the administrative class, Appellants, by immediately filing suit in district court, failed to allow the administrative process to run its course. * * * *Appellants simply seek to pick and choose* from portions of a preliminary administrative order *without allowing the administrative process to complete itself*.") (emphasis added).

In short, Congress imposed a clear condition on the right to bring employment discrimination disputes to federal court, and White simply chose not to comply with that condition. White has not identified any authority which would allow this court to excuse such willful noncompliance. As the Supreme Court cautioned,

> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated in *Mohasco Co. v. Silver*, 447 U.S. 807, 826 . . . (1980), "[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

*Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). *See, e.g., Dillard v. Inalfa Roof Sys., Inc.*, 2006 WL 2375701, *8 (E.D. Mich. Aug. 16, 2006) ("Dillard essentially withdrew his EEOC claim by initiating the instant action prior to the EEOC's disposition of his claim.") (citing *Branham v. Home Depot USA, Inc.*, 225 F. Supp.2d 762, 766 (E.D. Mich. 2002) (Title VII discrimination plaintiff was not entitled to bring claims in federal court where he had filed a charge of discrimination against employer on February 28, 2000 but voluntarily withdrew the charge on July 25, 2000; "Not having given the Commission the opportunity to attempt conciliation or voluntary settlement, Jenkins also has failed to exhaust his administrative remedies.")). *Accord Bowers v. Nicholson*, 271 F. App'x 446, 447 (5th Cir. 2008) ([The EEO counselor] "indicat[ed] that he should only sign the withdrawal forms if he did not want to follow through with his complaints. * * * Bowers signed the withdrawal forms and sent them back to the EEO counselor . . . . * * * Because Bowers withdrew his claims, he failed to exhaust his administrative remedies; the district court did not err in dismissing his claims on that basis.").[2]

---

[2]

*Accord Pearsall v. Holder*, 610 F. Supp.2d 87 (D.D.C. 2009) (by filing and then withdrawing EEO complaint alleging that transfer constituted a "functional demotion", employee failed to

(Names of panel members and judges omitted) (brief and record citations omitted). Then, following customary practice, this court exercised its discretion to decline supplemental jurisdiction over White's state-law claims. *See White*, 659 F. Supp.2d at 864.

**The plaintiff's reconsideration motion contends that this court**

> erroneously relied upon case law which governs the exhaustion of remedies doctrine which applies to the EEOC in bringing a case under Title VII, which is subject to different exhaustion requirements than an individual plaintiff.
>
> This court's determination is contrary to 29 C.F.R. § 1601.28, which provides that the EEOC may issue a right to sue letter if it determines that it will be unable to complete processing of the charge within 180 days of its filing, and case law which demonstrates that a plaintiff may request a right to sue letter from the EEOC and satisfy the exhaustion requirement.
>
> Plaintiff has secured an affidavit from the Regional and State Coordinator of the EEOC which attests that its actions in issuing the right to sue letter were in accordance with 29 C.F.R. § 1601.28, along with other documents from the EEOC which demonstrate that the manner in which Ms. White's charge was handled was consistent with EEOC procedures, and an affidavit from the MDCR case worker which demonstrates that Ms. White was willing to engage in mediation of the charge.

Plaintiff White's Motion for Reconsideration at 1-2.

**ORDER**

No later than Wednesday, March 3, 2010, the defendant **SHALL FILE** a brief responding to plaintiff's motion for reconsideration [document # 41].

This is not a final and immediately-appealable order.

---

exhaust administrative remedies and could not bring that claim to court under Title VII and the ADEA); *Mahomes v. Potter*, 590 F. Supp.2d 775, 786-87 (D.S.C. 2008); *Sharon v. Yellow Freight Sys.*, 872 F. Supp. 839, 846 (D. Kan. 1994) ("[a] claimant who abandons or withdraws his or her claim before the agency has reached a determination cannot be deemed to have exhausted administrative remedies"); *Brown v. NYC*, 869 F. Supp. 158, 170 (S.D.N.Y. 1994) (holding that by withdrawing his EEOC claims, plaintiff "effectively failed to exhaust his remedies").

**IT IS SO ORDERED this 10th day of February 2010**.

                                                      /s/ Paul L. Maloney
                                                      Honorable Paul L. Maloney
                                                      Chief United States District Judge