UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA WHITE,

Plaintiff,

v.

NORTHERN MICHIGAN REGIONAL HOSPITAL,

Defendant.

Case No. 1:08-cv-734

Chief Judge Paul L. Maloney

**OPINION and ORDER**

**Denying the Plaintiff's Motion for Reconsideration of 659 F. Supp.2d 858 (W.D. Mich. Sept. 11, 2009)**
(Dismissing the Title VII Claim for Failure to Exhaust Administrative Remedies);

**Amending the Judgment to Dismiss the Title VII Claim *with* Prejudice**

Surgical technician Melissa White brought this pregnancy-discrimination action against her former employer, Northern Michigan Regional Hospital ("the hospital") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 200e(k). White also asserted pendent claims for sex and pregnancy discrimination and retaliation under Michigan's Elliott-Larsen Civil Rights Act. White began working for the hospital as an at-will employee in September 2007, subject to a probationary period during which she was not eligible for vacation or progressive discipline procedures. The parties agreed that White informed the hospital that she was pregnant on October 1, 2007, and her employment ended on December 19, 2007, towards the end of her probationary period. The hospital moved to dismiss on the ground that White failed to exhaust her administrative remedies. In the

alternative, the hospital moved for summary judgment on the ground, *inter alia*, that White could not show a genuine issue of material fact as to some of the elements of a *prima facie* case of pregnancy discrimination. After hearing oral argument in September 2009, the court dismissed the Title VII claim without prejudice for failure to exhaust administrative remedies, and declined supplemental jurisdiction over the state-law claims. *See White v. Northern Michigan Hospital*, 659 F. Supp.2d 858 (W.D. Mich. Sept. 11, 2009) (Maloney, C.J.).

White is 25 years old and has earned two Associate's degrees from Mott Community College and a Surgical Technician Certification from Northern Michigan University, *White*, 659 F. Supp.2d at 859. White was hired on a probationary basis as an entry-level Surgical Technologist I for the hospital in Petoskey, Michigan. She was employed in that capacity from September 17, 2007 until her termination on December 19, 2007. Her job was to assist physicians during surgery. She acknowledges that a surgical tech's schedule is based on the surgeries being performed at the hospital, which therefore needs sufficient staff available at the time each surgery is scheduled, *id.* The position was White's first following graduation and, like other new employees at the hospital, she was subject to a 180-day probationary period, during which she was ineligible for time off or progressive discipline procedures, *id.* at 859. White understood that the training was important and that the hospital spent significant money and staff time to prepare new Surgical Techs for the transition to a regular surgical schedule. She also understood that her supervisor, Jeanette Rockwell, was concerned about her inconsistent attendance because Rockwell was responsible for scheduling surgical techs in the ORs and the hospital needed White to be present and doing her job, *id.* at 860.

The training required White to rotate through each OR surgical speciality – general/vascular, urology/gynecology, ENT/plastics, neurosurgery, and orthopedics – during which she was observed and supervised by more-experienced surgical techs called preceptors, who provided feedback and

evaluations; they submitted weekly progress reports, which Education Coordinator Rockwell reviewed with White and the other probationary employees, *id.* at 861. White presented progress reports which she characterizes as praising her performance and attitude throughout September, October and November, primarily September. The court reproduced those evaluations, and other evaluations submitted by defendant NMH, at length, *id.* at 862-63.

Rockwell oversaw the orientation program for new surgical techs, meeting with them, bringing mistakes to their attention, inspecting surgical suites, observing surgeries, and stopping techs in the hallway to discuss issues and point out errors. White testified that she has no reason to believe that Rockwell did not point out errors to other new surgical techs, *id.* at 863.

On October 1, 2007, upon hearing the news that White was pregnant, department manager Kathleen English allegedly said to her, "This is just what we need." *Id.* at 863. White alleges that thereafter, her supervisors subjected her to greater scrutiny and increasingly criticized her performance, e.g., Rockwell was constantly watching her through the OR windows. Unspecified supervisors allegedly made comments such as "you need to manage your pregnancy better." *Id.*

The remainder of the factual background is set forth at *White*, 659 F. Supp.2d at 863-69 (White's acknowledged absences and latenesses, the alleged effect of these absences and latenesses on surgical staffing, and the specific comments which White alleges hospital supervisors and employees made about her pregnancy, and White's conversations with supervisors English and Rockwell up to and including the December 11, 2007 meeting which resulted in White being fired).

The hospital moved for summary judgment in June 2009, and in July 2009 White filed an opposition brief and the hospital filed a reply brief. In August 2009, as directed by the court, the hospital filed a supplemental reply brief further developing its contention that the complaint should

be dismissed for failure to exhaust administrative remedies. White did not file a response to the supplemental reply or seek an extension of time in which to do so. This court dismissed White's complaint for failure to properly exhaust administrative remedies. White seeks reconsideration.

**In the ruling which White seeks to reconsider, this court reasoned as follows with regard to the Title VII claim:**

> As the United States Supreme Court has declared,
>
> > In Title VII Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of . . . discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation.
>
> *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81 (1989) (citing 42 U.S.C. § 2000e-5(b)). Likewise, our Circuit emphasizes that "the purpose of Title VII's administrative scheme is 'to encourage reconciliation and arbitration of employee grievances prior to litigation.'" *Steiner v. Henderson*, 354 F.3d 432, 437 (6th Cir. 2003) (quoting *Morgan v. Washington Mfg. Co.*, 660 F.2d 710, 711 (6th Cir. 1981)). *See also Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 471 (6th Cir. 2008) ("The policy or purpose of the exhaustion requirement 'is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation.'") (quoting *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (citation omitted)); *EEOC v. Watkins v. Motor Lines, Inc.*, 463 F.3d 436, 439 (6th Cir. 2006) (referring to "the EEOc's conciliation efforts (required in ADA actions)") . . . ; *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) ("The purpose of this requirement is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate *conciliation procedures in an attempt to avoid litigation*.") (emphasis added) . . . .
>
> It is undisputed that White filed her Charge of Discrimination with the Michigan Department of Civil Rights ("MDCR") on February 15, 2008, attesting under oath, "I also want this charge filed with the EEOC." [Only about sixty days later], White and her counsel contacted the MDCR and requested withdrawal of the charge "because I will pursue the issues raised in my complaint in court," because on that date MDCR Rights Representative Janet Dillard sent White a notice acknowledging that White had done so, and quoting White's exact language to that effect.
>
> White alleged that she withdrew only her MDCR charge, without withdrawing her EEOC charge or terminating her participation in the EEOC process. The court rejects

this interpretation of White's action as untenable. Along with the notice acknowledging White's request to withdraw her charge and proceed in court instead, the MDCR attached a form, entitled Information for the Charging Party - How to Obtain an EEOC Notice of Right to Sue, which clearly advised her, in pertinent part:

> *This means your charge of discrimination filed with the Michigan Department of Civil Rights (MDCR) and dually filed with the Equal Employment Opportunity Commission (EEOC) will be closed*, because your intent is to sue the respondent company in federal court.
>
> Notices of Right to Sue are issued by the EEOC.
>
> To receive your RTS:
>
> Sign a withdrawal form suppled by the MDCR. Your signature on the withdrawal form acknowledges your intent to close your case with the MDCR and to receive a Notice of Right to Sue from the EEOC.
>
> *MDCR will submit your withdrawal to the EEOC*, along with your request for a[n] RTS.
>
> *Your case will be closed with the EEOC when your RTS is issued.* This process usually takes two months or longer.

At oral argument, White's counsel emphasized that White had no authority or power to prevent the EEOC from continuing to investigate and, if it chose, to take action against the hospital in the enforcement of Title VII. The court agrees, of course, that a private party lacks statutory or regulatory authority to dictate whether the EEOC initiates or continues an investigation. *See Walker v. UPS, Inc.*, 240 F.3d 1268, 1273 (10th Cir. 2001) ("Private parties such as Walker do not have the power to take away EEOC's enforcement authority . . . .") (citing *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir. 1999) ("Significantly, an individual may not, in an effort to effectuate her own interests, take away the enforcement authority of the EEOC even if she wishes to withdraw her charge of discrimination.")).[1]

---

[1] Even this may be too charitable towards White's position on how much the EEOC could do once she withdrew her charge. While the EEOC might investigate to some degree without White's participation and cooperation, conciliation is another matter. In turn, the EEOC might not be permitted to file an action to enforce Title VII against the hospital if the hospital was not afforded an opportunity to *conciliate* with White under the EEOC's auspices. Our Circuit has quoted with approval the Commissioner's statement that "'*the Commission ordinarily may not sue or intervene in suits or issues on which it has not* found cause and *attempted conciliation*.'" *Jackson v. Richards Med. Co.*, 961 F.2d 575, 584 (6th Cir. 1992) (quoting 45 FED. REG. 48614, 48615 (July 21, 1980)).

*Accord EEOC v. Sherwood Med. Indus., Inc.*, 452 F. Supp. 678, 681 (M.D. Fla. 1978), where the court dismissed the EEOC's action to enforce Title VII's prohibitions on race and sex discrimination, stating,

> If the Commission is to seek relief in federal court it must be prepared to show that it has satisfied the jurisdictional prerequisites including submitting the matters in issue to conciliation. It has not done so here and it therefore follows that suit on the sex discrimination claim was premature.

*Sherwood*, 452 F. Supp.2d at 681. *See also*, *citing Sherwood*:

**1st,** *EEOC v. IBEW*, 476 F. Supp. 341, 344-45 (D. Mass. 1979) ("Among the jurisdictional requirements of an EEOC-initiated enforcement action are . . . (2) inclusion of the defendant and the possibly discriminatory acts for which it is responsible in the reasonable[-]cause determination . . . and (3) efforts at informal settlement and conciliation prior to formal court action . . . . Of these three requirements, the most important is the attempt to conciliate . . . .") (citing 42 U.S.C. § 2000e-5(f)(1) and . . . *Allegheny Airlines*, 436 F. Supp. 1300, 1306 (W.D. Pa. 1977));

**5th** . . . *HBH, Inc.*, 1999 WL 508403, *2 (E.D. La. July 19, 1999) ("Conciliation is . . . a condition precedent to the Commission's power to sue. There is no exception under the statute. * * * [F]ailure to conciliate is fatal to an action brought by the EEOC.") (citing . . *Magnolia Elec. Power Ass'n*, 635 F.2d 375, 378 (5th Cir. 1981));

**7th** . . . *Warshawsky & Co.*, 1993 WL 303097, *14 (N.D. Ill. Apr. 15, 1993) ("[C]onditions precedent to suit will not have been met unless EEOC has exhausted the possibilities of conciliation with respect to each issue it seeks to litigate.") (citing . . . *Motorola, Inc.*, 468 F. Supp.2d 857, 859 (N.D. Ill. 1987)) . . . ;

**8th** . . . *Am. Home Prods. Corp.*, 165 F. Supp.2d 886, 908-14 (N.D. Iowa Sept. 13, 2001), *recon. denied*, 2001 WL 34008710 (Dec. 20, 2001);\

**9th** . . . *Bruno's Restaurant, Inc.*, 1990 WL 300242 (S.D. Cal. Aug. 16, 1990) ("the Commission must make a genuine effort to conciliate with respect to each and every employment practice complained of. * * * Accordingly, conciliation is a prerequisite to this action, and there's been insufficient proof established in Plaintiff's case that the requirement of conciliation on a pattern and practice policy was satisfied. * * * So, the [employer's] motion [to dismiss title VII pregnancy-discrimination claims] must be granted on that basis.");

**10th** . . . *Gardner Mgmt. Group*, 2007 WL 1672820, *1 (W.D. Okla. June 5, 2007);

**11th** . . . *Dinkins*. . . 133 F. Supp.2d 1237, 1246 (M.D. Ala. 2001) ("[T]he court finds that any ADA claim is barred. * * * EEOC never attempted to conciliate this matter. * * * Accordingly, the court finds that it has no jurisdiction over any ADA claims.") (citing *Stehle* . . . (D.S.C. 1994)); . .

But White's argument in this regard conveniently overlooks the fact that investigation is not the only major purpose of the administrative process. Nor is enforcement litigation (by the aggrieved employee or the EEOC) the only outcome contemplated by Congress. On the contrary, litigation from either source is decidedly *not* the outcome preferred by Congress, as our precedents make clear.

Rather, as our Circuit has emphasized, "'Voluntary compliance is Title VII's preferred method for promoting the goal of nondiscrimination; it is also the reason for the EEOC's existence.'" *Steiner*, 354 F.3d at 437 (quoting *St. John* . . . (9th Cir. 1981) and citing *Alexander* . . . 415 U.S. 36, 44 (1974) ("stating that '[c]ooperation and voluntary compliance" were selected by Congress as the preferred means of assuring equality of employment opportunities by eliminating discrimination, and '[t]o this end, Congress created the [EEOC]' and established a procedure by which the EEOC and cooperating local agencies would have an opportunity to settle disputes through conference and conciliation before the aggrieved party was allowed to file a lawsuit."); *see also Randolph v. Dep't of Youth Servs.*, 453 F.3d 724, 724, 731-32 (6th Cir. 2006) ("This requirement exists so that the EEOC will have an opportunity to convince the parties to enter into [a] *voluntary settlement, which is the preferred means of disposing of such claims*.") (citing *Parsons v. Yellow Freight Sys., Inc.*, 741 F.2d 871, 873 (6th Cir. 1984)) (emphasis added).

By unequivocally terminating her involvement in the EEOC administrative process, White thwarted "the EEOC's function as an efficient conciliator", which is "central to Title VII's statutory scheme." *Gavette v. Brady* . . . 1993 WL 384902, *2 (6th Cir. Sept. 28, 1993); *cf. Jackman v. NLRB*, 784 F.2d 759, 764 (6th Cir. 1986) (referring to "the generally accepted doctrine of promoting settlement agreements, which has been characterized as the 'lifeblood of the administrative process,' and is of the utmost importance to the administration of the Act." ) (citation omitted).

By definition, "conference" and "conciliation" are impossible when one of the parties indicates that she will no longer participate. *Cf., e.g., Shikles* . . . 426 F.3d 1304, 1311 (10th Cir. 2005) ("[W]e hold that a private sector employee must cooperate with the EEOC in order for the employee to exhaust his or her administrative remedies . . . ."); *Adair* . . . . 102 F. Supp.2d 1092, 1097 (S.D. Iowa 1999) (because employee failed to

---

. . *Crown Liquors of Broward, Inc.*, 503 F. Supp. 330, 333 (S.D. Fla. 1980) ("The Commission's right to maintain suit is not without limitation, regardless of the scope of its investigation. Thus, [it] may not sue on a complaint broader in scope than the results of its investigation as contained in its reasonable-cause determination. The determination of reasonable cause defines the framework for conciliation, and conciliation of all claims sought to be litigated must be attempted prior to suit thereon.") (internal cite omitted) (citing . . . *Pierce & Stevens*, 434 F. Supp. 1162 (W.D.N.Y. 1977)).

cooperate with state civil-rights commission's efforts after filing discrimination charge, she did not exhaust her administrative remedies . . . .

The administrative remedies which White short-circuited are part of a carefully designed, integrated framework which combines investigation, conference and conciliation, and lastly – only if it is unavoidable, *after* the other processes have been fully tried – litigation. Aggrieved persons cannot pick and choose which components of the system they will allow to operate. *Cf. Hines v. Widnall*, 334 F.3d 1253, 1259 (11th Cir. 2003) ("[T]he EEOC had not yet reached a final determination on the merits of Appellants' claim. After the EEOC certified the administrative class, Appellants, by immediately filing suit in district court, failed to allow the administrative process to run its course. * * * *Appellants simply seek to pick and choose* from portions of a preliminary administrative order *without allowing the administrative process to complete itself*.") (emphasis added).

In short, Congress imposed a clear condition on the right to bring employment discrimination disputes to federal court, and White simply chose not to comply with that condition. White has not identified any authority which would allow this court to excuse such willful noncompliance. As the Supreme Court cautioned,

> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated in *Mohasco Co. v. Silver*, 447 U.S. 807, 826 . . . (1980), "[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

*Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). *See, e.g., Dillard v. Inalfa Roof Sys., Inc.*, 2006 WL 2375701, *8 (E.D. Mich. Aug. 16, 2006) ("Dillard essentially withdrew his EEOC claim by initiating the instant action prior to the EEOC's disposition of his claim.") (citing *Branham v. Home Depot USA, Inc.*, 225 F. Supp.2d 762, 766 (E.D. Mich. 2002) (Title VII discrimination plaintiff was not entitled to bring claims in federal court where he had filed a charge of discrimination against employer on February 28, 2000 but voluntarily withdrew the charge on July 25, 2000; "Not having given the Commission the opportunity to attempt conciliation or voluntary settlement, Jenkins also has failed to exhaust his administrative remedies.")).

*Accord Bowers v. Nicholson*, 271 F. App'x 446, 447 (5th Cir. 2008) ([The EEO counselor] "indicat[ed] that he should only sign the withdrawal forms if he did not want to follow through with his complaints. * * * Bowers signed the withdrawal forms and sent them back to the EEO counselor . . . . * * * Because Bowers withdrew his claims, he failed to exhaust his administrative remedies; the district

court did not err in dismissing his claims on that basis.").[2]

(Names of panel members and judges omitted) (brief and record citations omitted). Then, following customary practice, this court exercised its discretion to decline supplemental jurisdiction over White's state-law claims. *See White*, 659 F. Supp.2d at 864.

**The plaintiff's reconsideration motion contends that this court**

> erroneously relied upon case law which governs the exhaustion of remedies doctrine which applies to the EEOC in bringing a case under Title VII, which is subject to different exhaustion requirements than an individual plaintiff.
>
> This court's determination is contrary to 29 C.F.R. § 1601.28, which provides that the EEOC may issue a right to sue letter if it determines that it will be unable to complete processing of the charge within 180 days of its filing, and case law which demonstrates that a plaintiff may request a right to sue letter from the EEOC and satisfy the exhaustion requirement.
>
> Plaintiff has secured an affidavit from the Regional and State Coordinator of the EEOC which attests that its actions in issuing the right to sue letter were in accordance with 29 C.F.R. § 1601.28, along with other documents from the EEOC which demonstrate that the manner in which Ms. White's charge was handled was consistent with EEOC procedures, and an affidavit from the MDCR case worker which demonstrates that Ms. White was willing to engage in mediation of the charge.

Plaintiff White's Motion for Reconsideration ("P's Mot") at 1-2. White elaborates as follows:

> Case law demonstrates that there is no obligation for a private party to engage in conciliation in order to fully exhaust administrative remedies, while the EEOC must engage in conciliation prior to instituting litigation. Further, a private party may request the issuance of a right to sue letter from the EEOC while still satisfying the exhaustion requirements and permitting the individual to maintain claims in federal

---

2

*Accord Pearsall v. Holder*, 610 F. Supp.2d 87 (D.D.C. 2009) (by filing and then withdrawing EEO complaint alleging that transfer constituted a "functional demotion", employee failed to exhaust administrative remedies and could not bring that claim to court under Title VII and the ADEA); *Mahomes v. Potter,* 590 F. Supp.2d 775, 786-87 (D.S.C. 2008); *Sharon v. Yellow Freight Sys.*, 872 F. Supp. 839, 846 (D. Kan. 1994) ("[a] claimant who abandons or withdraws his or her claim before the agency has reached a determination cannot be deemed to have exhausted administrative remedies"); *Brown v. NYC,* 869 F. Supp. 158, 170 (S.D.N.Y. 1994) (holding that by withdrawing his EEOC claims, plaintiff "effectively failed to exhaust his remedies").

courts.

"The Title VII plaintiff satisfies the prerequisites to a federal action (1) by filing timely charges of employment discrimination with the EEOC, and (2) receiving and acting upon the EEOC's statutory notice of the right to sue." *Puckett v. Tennessee Eastman Company*, 889 F.2d 1481 (6th Cir. 1989), citing 42 U.S.C[.] 2000e-5(f)(1); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 . . . (1973); *see also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 . . . (1974).

> The plaintiff exhausted administrative remedies and satisfied the requirements of the Act by filing a complaint with the Commission and awaiting its advice. *He is not required to show that the Commissioner has endeavored to conciliate.* To insist that he do so, would require him to pursue an administrative remedy which may be impossible to achieve. If the Commission makes no endeavor to conciliate, the remedy is ineffective and inadequate.

*Johnson v. Seaboard Air Line Railroad Company*, 405 F.2d 645 (4th Cir. 1968) [no page number provided], citing *Quarles v. Philip Morris Inc.*, 271 F. Supp. 842, 847 (E.D. Va. 1967) (emphasis added).

* * * [T]he majority of [this court's] cited cases involve claims brought *by the EEOC* on behalf of aggrieved parties, *not claims by aggrieved parties*. This is a significant distinction, as the EEOC does have a conciliation requirement placed upon it before it may institute a claim on behalf of an aggrieved party. As the courts have explained,

> Conciliation is the final step in an EEOC administrative proceeding *and a condition precedent to the Commission's power to sue* . . . . The courts have interpreted the statute to mean precisely what it says and it is thus now well established that failure to conciliate is fatal to a Title VII action brought by the commission; the suit or claim must be dismissed as premature . . . . *By contrast, conciliation by the Commission is not a condition precedent to the institution of a private action for relief under Title VII by an individual plaintiff. See Gamble v. Birmingham Southern R.R. Co.*, [514 F.2d 678 (5th Cir. 1975)]; *Danner v. Phillips Petroleum Co.*, 47 F.2d 159 . . . (5th Cir[.] 1971).

*EEOC v. Sherwood Medical Industries, Inc.*, 452 F. Supp. 678 (M.D. FL. 1978) (emphasis added). Indeed, none of the cases cited by this Court hold that an individual plaintiff must engage in conciliation in order to fully exhaust administrative remedies. Further, in its briefing and oral argument, Defendant failed to produce any case which holds that an individual plaintiff must engage in conciliation in order to fully exhaust administrative remedies. Thus, it is error to impose this requirement upon the Plaintiff in this case as a means to dismiss her

> claims. Ms. White has clearly satisfied her exhaustion requirements. She filed a complaint with the EEOC and received a right to sue letter. That is all that is required of a private plaintiff.
>
> * * *
>
> * * * There has been no evidence produced that Ms. White failed to cooperate with the EEOC or the MDCR. In fact, the opposite is true. The MDCR case worker has attested through affidavit that she has no information which suggests that Ms. White refused to cooperate with the MDCR or refused to provide information necessary to process the charges. (Ex 1- Affidavit of Janet Dillard) Ms. White simply requested a right to sue letter. In fact, Ms. Dillard attests that while Ms. White was willing to mediate her MDCR charge, the Defendant refused to participate in MDCR mediation. (Ex 1 - Affidavit of Janet Dillard) Given the Defendant's refusal to mediate, Ms. White requested a right to sue letter (Ex 2 - Withdrawal of MDCR charge)[.] Surely the Plaintiff cannot be faulted for failure to exhaust her administrative remedies for failing to conciliate when it was the Defendant who refused to engage in this voluntary process.

Plaintiff White's Brief in Support of Motion for Reconsideration ("P's Br") at 2-5 (emphasis in original, some ¶ breaks added).

The court directed NMH to file a brief in opposition to reconsideration by March 3, 2010, *see White v. No. Michigan Reg. Hosp.*, 2010 WL 549312 (W.D. Mich. Feb. 10, 2010) (Maloney, C.J.), and NMH did so on that date, *see* Doc 46 ("Def's Opp").

**Preliminarily, the hospital correctly notes that NMH's reconsideration motion "relie[s] on the same MDCR/EEOC forms already presented to the Court for review and consideration before it ruled on Defendant's Motion for Summary Judgment . . . ."** Def's Opp at 2. If White wished to present the instant arguments and authorities while this court was considering the hospital's summary-judgment motion, she could and should have sought leave to file a response to the hospital's supplemental brief on the exhaustion issue. White proffers no justification for her failure to do so, just the excuse that the court's order directing the hospital to file the supplemental brief "did not direct or permit Plaintiff to file such a response, nor is such a response permitted by the Federal Rules of Civil Procedure absent the Court's permission." P's Br at 4 n.4. This begs the question of

why White did not seek "the Court's permission" to file a response – a question which White does not attempt to answer. Moreover, the court did not denominate the hospital's exhaustion brief as a sur-reply brief – i.e., a brief responding to issues or arguments raised in White's reply brief – but as a "supplemental brief" on a particular issue. Neither the Federal Rules nor our District's Local Civil Rules say anything one way or the other about the propriety of filing (or seeking leave to file) a response to such a brief. White cannot blame the Federal or Local Rules for her own failure to seek leave to file a response to the hospital's supplemental brief (or even to raise the instant additional argument, caseworker affidavit, and case law at the summary-judgment hearing, if not in a brief).

**Second, the hospital strenuously and persuasively objects to White's assertion, *see* P's Br at 2 n.2, that it never argued that she had "thwarted attempts at conciliation"**, calling it

> disingenuous at best. NMRH has consistently argued that, by withdrawing her Charge of Discrimination, Plaintiff failed to exhaust her administrative remedies because, upon the withdrawal, the EEOC stops processing the Charge, or in other words, stop[s] investigating, which is a prerequisite to conciliation.
>
> Possibly, Plaintiff has confused mediation with conciliation. However, the two processes are unique [sic, distinct] in that mediation is a diversionary pre-investigation process described by the EEOC as occurring "[b]efore we look into your claims", and conciliation is a statutorily required process which occurs after the investigation is completed and the EEOC finds that the Employer probably violated the law (Plaintiff's Motion for Reconsideration, Document No. 41-10, p. 3 of 5).

Defendant's Brief in Opposition to Reconsideration ("Def's Opp") at 1 n.2. The record supports the hospital's position in this secondary dispute. The MDCR caseworker affidavit presented by White in support of the instant motion manifestly does *not* state that the hospital refused to engage in, or otherwise "thwarted" conciliation. Rather, the caseworker attests only that the hospital "refused to *mediate*." P's Mot, Ex 1 (Doc 41-2), Affidavit of Michigan Department Of Civil Rights "Rights Representative" Janet Dillard executed Sept. 18, 2009 ("Dillard Aff") (emphasis added). White

points to no evidence in the record suggesting that the hospital ever expressed an unwillingness to engage in the different, later process of *conciliation* (which could fully take place as contemplated by Congress only if *she* stayed in the process, rather than short-circuiting it in favor of adversarial litigation).

Even according to the caseworker, it was *White* who unilaterally imposed a condition on her willingness to do her part to let the investigation and conciliation processes run their course. The caseworker says that before the hospital was asked whether it would engage in mediation (apparently early on), White arbitrarily stated that if the hospital would not mediate, she would cut the entire process short and "therefore" refuse to participate in conciliation. As the caseworker attests,

> [I]n one of these conversations after the filing of the charge, Charging Party Melissa White, through her counsel, indicated that if the respondent was willing to mediate, the charging party would keep the case open and mediate, but if the respondent was unwilling to mediate, the charging party wanted a right to sue letter.
>
> I contacted the Respondent Northern Michigan Hospital to inquire whether they wished to mediate this matter. Respondent Northern Michigan Hospital subsequently indicated that they were unwilling to mediate.
>
> I informed Charging Party and/or her counsel that Northern Michigan Hospital was unwilling to mediate. Charging Party therefore wanted a right to sue letter issued.

Dillard Aff ¶¶ 6-8. The court will assume that White has inadvertently confused or conflated mediation with conciliation. Nonetheless, raising the issue has not bolstered the merits of White's request for reconsideration.

In addition to the mediation-conciliation distinction which White apparently failed to grasp in presenting the caseworker's affidavit, the affidavit is immaterial in any event. The caseworker concludes her affidavit by stating,

> I have no information available to me which suggests that Melissa White refused to cooperate with the Michigan Department of Civil Rights or refused to provide the

> Michigan Department of Civil Rights with requested information in processing this charge.

Dillard Aff ¶ 10. It is not the province of an administrative-agency employee, federal or state, to opine as to whether a party satisfied statutory or other legal requirements which are preconditions to bringing suit in federal court. That is the right and responsibility of the courts alone, applying Congress's legislation and decisions interpreting it. Moreover, even if the court credited the caseworker's opinion, this court *does* have "information available to" it demonstrating conclusively that White failed to satisfy a crucial component of her exhaustion requirement as this court interprets the law (as set forth in the original opinion dismissing her complaint).

**Third, the hospital correctly points out that the court did not, as White implies, rely only on case law or reasoning pertaining to the *EEOC's* duty to attempt conciliation, rather than case law and reasoning pertaining to aggrieved private parties.** The hospital accurately asserts that several of the decisions on which the court relied, were cases involving *individuals* as plaintiffs, not the EEOC as plaintiff; the opinion cited two such decisions, and the court considered another two presented in the briefs. *See Scott v. Eastman Chem. Co.*, 275 F. App'x 466 (6th Cir. 2008) and *Steiner v. Henderson*, 354 F.3d 432 (6th Cir. 2003) (cited); *see also Branham v. Home Depot USA*, 225 F. Supp. 762 (E.D. Mich. 2002) and *Dillard v. Inalfa Roof Sys.*, 2006 WL 2375701 (E.D. Mich. Aug. 16, 2006) (Robert Cleland, J.). White has not dissuaded the court from its concurrence with *Branham*, where Judge Rosen stated as follows:

> In *Parsons [v. Yellow Freight Systems, Inc.*, 741 F.2d 871, 873 (6th Cir. 1984) (Edwards, Kennedy, E.D. Mich. D.J. Charles Joiner)], the Sixth Circuit explained the reason for requiring exhaustion:
>
>> "The requirement that plaintiff exhaust administrative remedies prior to instituting suit is intended to ensure that Commission will have been afforded an opportunity to attempt conciliation and voluntary

> settlement, 'the preferred means for resolving employment discrimination disputes.'"

> *Id.* at 873 ([citing, *inter alia*, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974) and *US v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 846 (5th Cir. 1975]).
>
> * * *
>
> Plaintiff Jenkins filed an MDCR charge but then withdrew it on July 25, 2000 without any investigation or decision having been made by the Commission. Not having given the Commission the opportunity to attempt conciliation or voluntary settlement, Jenkins also has failed to exhaust his administrative remedies.

*Branham*, 225 F. Supp.2d at 766. Nor has White undermined the cogency of *Dillard*, where Judge Cleland held that an individual plaintiff who brought a Title VII racial-discrimination claim in federal court before waiting to see if the EEOC would fully investigate, had not exhausted his administrative remedies. Judge Cleland wrote as follows:

> Defendant asserts that "Dillard's claims are . . . barred in their entirety before the EEOC conducted any investigation of his claims. * * * *The filing requirement is not met where an employee timely files a charge but withdraws it before the EEOC has an opportunity to act on it.*"
>
> * * * In the instant case, Plaintiff Dillard essentially withdrew his EEOC claim [charge] by initiating the instant action prior to the EEOC's disposition of his claim.

*Dillard*, 2006 WL 2375701 at *8 (citation to brief omitted).

In our case, plaintiff White likewise withdrew her EEOC / MDCR charges merely sixty days after filing it. Whether or not the EEOC later claimed, in her right-to-sue letter, that it would not have had a chance to fully investigate her charge in a timely fashion anyway, is beside the point. White has not presented any precedential authority suggesting that a plaintiff who unilaterally short-circuits the administrative process can fall back on some sort of "no harm, no foul" rule. In other words, no binding precedent that a plaintiff who refuses to remain available for her part in conciliation is excused if it turns out that the EEOC might have run out of time even if plaintiff had done her part. Rather, a plaintiff must remain available for conciliation until and unless the EEOC

informs her that conciliation will not or cannot take place – whether because it will not complete its investigation in a timely fashion, or for some other reason which prevents conciliation, one of the most important, if not *the* most important aspect of the administrative process. As the Fourth Circuit has admonished Title VII plaintiffs,

> The filing of an administrative charge is not merely a formality to be rushed through so that an individual can quickly file his subsequent lawsuit. Rather, Congress intended the exhaustion requirement to serve the primary purposes of notice and *conciliation*.

*Chacko v. Patuxent Institution*, 429 F.3d 505, 510 (4th Cir. 2005); *see also Pagan-Torres v. Puerto Rico Land Auth.*, 2055 WL 1907544, *4 (D.P.R. Aug. 10, 2005) ("*The purpose of said [exhaustion] requirement is to put the employer on notice of the claim and to provide an opportunity for early conciliation*. Consequently, the civil complaint must be framed within the charges as alleged in the administrative complaint and the investigation that may reasonably result from such charge. The main purpose behind this procedure is to provide mediation *and* conciliation and avoid that an employee may allege one claim in the administrative charge and a completely different claim in the civil complaint.") (citing *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996) (citation omitted)) (emphasis added).

**Fourth and last, White's reliance on *Fall v. MNP,* 2007 WL 1544392 (E.D. Mich. May 25, 2007), is unavailing for several reasons.** <u>First, *Fall* was issued more than *two years* before White filed her brief opposing summary judgment</u> (Doc 32, filed July 16, 2009), and twenty-seven months before oral argument (September 9, 2009). White proffers no justification for failing to present *Fall* while the court was considering the hospital's summary-judgment motion, preferably in a brief. *See Aslani v. Sparrow Health Sys.*, 2009 WL 3711602, *11 (W.D. Mich. Nov. 3, 2009) ("Aslani's reconsideration motion first contests the applicability of these limitations periods. * * *

Yet Aslani does not identify where, *in his briefs opposing the prior dispositive motions*, he contested the police defendants' contention regarding the applicability of Michigan's two-year assault-and-battery limitations period to Count Four . . . .") (citing *Habel v. Macomb Twp.*, 2006 WL 1007620, *2 (E.D. Mich. Apr. 8, 2006) (Battani, J.) ("A motion for reconsideration is not a vehicle by which Defendants may advance new arguments they neglected to advance on summary judgment.")). White likewise offers no justification for failing to obtain and present the MDCR caseworker's affidavit while the court was considering the summary-judgment motion, though that affidavit does not help her case for reconsideration in any event, as explained above. Those omissions warrant this court's refusal to entertain White's belated invocation of *Fall*. *See Harshaw v. Bethany Christian Servs., Inc.*, 20010 WL 331708, *5 (W.D. Mich. Jan. 22, 2010) (Maloney, C.J.) ("[T]o the extent that the defendants marshal arguments or authorities which were available during briefing on their limitations motion to dismiss, a motion for reconsideration again is not a proper vehicle.") (citing, *inter alia*, *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (**6th Cir.** 1998)). *Accord Exide Techs. v. K-Mart Corp.*, 209 WL 1600693, *1 (**E.D. Mich.** June 8, 2009) (Steeh, J.) (citing 11 Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 2810.1 (2d ed. 1995)); *Lee v. Putz*, 2006 WL 1791304, *2 (W.D. Mich. June 27, 2006) (**Bell, C.J.**) (citing *Martin v. A.O. Smith Corp.*, 931 F. Supp. 543, 550 (W.D. Mich. 1996) (**McKeague, J.**) (citation to 7th Circuit omitted)).

Second, even if *Fall* were properly before the court at this late juncture, it is merely a district-court opinion, and as such, has no precedential force in its district or elsewhere. *See US v. Flores*, 477 F.3d 431, 438 (6th Cir. 2007) (Richard Allen Griffin, J.) ("*Johnson* is a district court opinion and, therefore, not binding . . . .")); *Michigan Elec. Employees Pension Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp.2d 746, 762 (W.D. Mich. 2008) (Maloney, C.J.) ("'District court

opinions have persuasive only and are not binding as a matter of law.'") (quoting *Liebisch v. HHS*, 1994 WL 108957, *2 (6th Cir. Mar. 30, 1994)); *see also Paycom Billings Servs. v. Payment Resources Int'l*, 212 F. Supp.2d 732, 738 (W.D. Mich. 2002) (**Bell, C.J.**) ("This court is not bound by a California district court opinion.").

As a matter of law, "it cannot be a palpable defect in this court's original opinion that it did not follow an interpretation which has no precedential weight." *Aslani v. Sparrow Health Sys.*, 2009 WL 3711602, *13 (W.D. Mich. Nov. 3, 2009) (Maloney, C.J.) (denying motion for reconsideration) (criticizing movant's reliance on another district court's interpretation of a Sixth Circuit Court of Appeals decision, court noted, "This reliance is misplaced. First, this court is not obligated to follow any district court's characterization of our Circuit's precedents . . . ; it cannot be a palpable defect in this court's original opinion that it did not follow an interpretation which has no precedential weight."); *see also Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Exp., Inc.*, 288 F. Supp.2d 895, 900 (S.D. Ohio 2003) (Marbley, J.) ("While this Court may, and often does, consider opinions of the other Courts of Appeals, those decisions are not binding and do not reconsideration of an earlier decision of this Court."); *cf. Mirditaj v. Ashcroft*, 116 F. App'x 733, 734 (6th Cir. 2004) (Ryan, Cole, Rogers) ("The BIA did not abuse its discretion in denying the motion for reconsideration because the intervening case law was not binding on the BIA . . . .").[3] [4]

---

[3] *Accord* **2d Circuit,** *SEC v. Euro Security Fund*, 2000 WL 1376246, *3 (**S.D.N.Y.** Sept. 25, 2000) (Cote, J.) ("That decision is not binding on this Court, however, and as a consequence i[s] not a ground for reconsideration of the Court's ruling.");

**3d Circuit,** *Perry v. Freedom Mortg. Corp.*, 2009 WL 244776, *1 (**D.N.J.** July 27, 2009) (Bumb, J.) ("Moreover, even if the Court had overlooked the *Barnello* decision, Plaintiffs are correct that this would still not be proper grounds for reconsideration because the *Barnello* decision is not 'controlling law' and, thus, is not binding on this Court."); *J.L. v. Ambridge Area Sch. Dist.*, 2008 WL 1826193, *1 (**W.D. Pa.** Apr. 22, 2008) (Nora Barry Fischer, J.) ("The Court agrees with the

**Moreover, even if the court did consider White's invocation of this non-binding decision, it does not advance her argument for reconsideration.** White asserts the following with regard to *Fall* and its discussion of 29 C.F.R. § 1601.28(a)(2):

> In evaluating the claim, the [Eastern District of Michigan] noted that 29 C.F.R. § 1601.28(1)(2) [sic, should be (a)(2)] permits the EEOC to issue a right to sue letter upon request at any time prior to the expiration of 180 days from the date of filing of the charge with the EEOC, provided that it is probable that the Commission will be unable to complete its processing of that charge within 180 days. *Fall***[**, 2007 WL 1544392] at *8. Finding that the issue had not been addressed by the Sixth Circuit, Judge Cox found that "it is clear that Congress was concerned with the expeditious handling of charges with the EEOC, which led it to create a 180[-day] time limit with which to investigate charges.
>
> Because it is not prohibited by statute, it is reasonable for the EEOC to dispense with waiting for 180 days to pass when it is probable upon review that the EEOC will not complete the investigation in 180 days. To require otherwise leads to unnecessary delay." *[Id.* at *] 14-15. Thus, the court found that requesting a right to sue was consistent with EEOC regulations, and the Plaintiff had exhausted her administrative remedies.
>
> Clearly this is analogous to the present dispute. Ms. White filed her complaint of discrimination with the MDCR and EEOC on February 15, 2008. On April 17, 2008, Ms. White requested a right to sue letter. In order to facilitate this request, it was

---

argument set forth by Defendant. The decision cited by Plaintiffs in support of their motion for reconsideration , *L.R.*, is a decision by a district court . . . and [is] not binding on this Court."); *Retail Brand Alliance, Inc. v. Rockvale Outlet Ctr., LP*, 2007 WL 966509, *6 n.6 (**E.D. Pa.** Mar. 26, 2007) (Stengel, J.) ("Rockvale cites [a district court decision] . . . . * * * This opinion is not binding on the court and not an adequate reason to grant Rockvale's motion for reconsideration.");

4

*See US v. Flores*, 477 F.3d 431, 438 (**6th Cir.** 2007) (Richard Allen Griffin, J.) ("*Johnson* is a district court opinion and, therefore, not binding . . . ."));

***Accord*** *US v. Lacey*, 569 F.3d 319, 323 (**7th Cir.** 2009) (Manion, J.) ("Not only is *Fabrizio* a district court case that is not precedential authority . . . .") (citation omitted), *cert. denied*, – U.S. –, 130 S.Ct.431 (Oct. 13, 2009) (No. 09-319); *US v. Ensminger*, 567 F.3d 587, 594 (**9th Cir.** 2009) (noting with approval, "The district court here not only rejected *Powers* [M.D. Fla.] because it has no precedential value in the District of Montana . . . ."); *Werner Enters., Inc. v. Westwind Maritime Int'l, Inc.*, 554 F.3d 1319, 1325 n.5 (**11th Cir.** 2009) ("*Atkins* is a federal district court decision from another circuit, and would not be binding in any event.").

> necessary for Ms. White to withdraw her complaint with the Michigan Department of Civil Rights. (Ex 1 - Affidavit of Janet Dillard [no paragraph cited]; Ex 4 - How to Obtain a right to sue letter) Ms. White did withdraw her complaint with the MDCR, *but did not withdraw her complaint with the EEOC*. (Ex 5 - Withdrawal)
>
> The right to sue letter was issued on July 21, 2008, and clearly indicates that the EEOC had determined that it would be unable to complete processing of this charge within 180 days. (Ex 6 - Right to Sue) This process is entirely consistent with EEOC's procedures and 29 CFR 1608.24 as well. (Ex 7 - 29 CFR 1608.24)

P's Recon Br at 6-7 (emphasis in original). The cited regulation, however, is of no avail to White.

Out of an abundance of caution, the court has again reviewed *all* the subsections of 29 C.F.R. § 1601.28(a), not just the subsection cited by White. Subsection (a) provides, in its entirety,

> (1) When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued and the charge to which the request relates is filed against a respondent other than a government, governmental agency or political subdivision, the Commission shall promptly issue such notice as described in § 1601.28(e) to all parties, at any time after the expiration of one hundred eighty (180) days from the date of filing of the charge with the Commission, or in the case of a Commissioner charge 180 days after the filing of the charge or 180 days after the expiration of any period of reference under section 706(d) of Title VII as appropriate.
>
> (2) When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued, and the charge to which the request relates is filed against a respondent other than a government, governmental agency or political subdivision, the Commission may issue such notice as described in § 1601.28(e) with copies to all parties, at any time prior to the expiration of 180 days from the date of filing of the charge with the Commission; provided that the District Director, the Field Director, the Area Director, the Local Director, the Director of the Office of Field Programs or upon delegation, the Director of Field Management Programs has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect.
>
> (3) Issuance of a notice of right to sue shall terminate further proceedings of any charge that is not a Commissioner charge unless the District Director; Field Director; Area Director; Local Director; Director of the Office of Field Programs or upon delegation, the Director of Field Management Programs;

> or the General Counsel, determines at that time or at a later time that it would effectuate the purpose of title VII, the ADA, or GINA to further process the charge. Issuance of a notice of right to sue shall not terminate the processing of a Commissioner charge.
>
> (4) The issuance of a notice of right to sue does not preclude the Commission from offering such assistance to a person issued such notice as the Commission deems necessary or appropriate.

29 C.F.R. § 1601.28(a). This regulation does not directly authorize, nor does it implicitly justify, a plaintiff's withdrawing her charge before the EEOC has told her *anything* about whether it will be able and willing to complete a timely investigation. Moreover, as the defendant hospital points out, 29 C.F.R. § 1601.28(a) is premised on 42 U.S.C. § 2000e-5(b), otherwise known as section 706(f)(1) of the Act, which provides as follows:

> if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . .

No less than the United States Supreme Court has held that

> a natural reading of § 706(f)(1) can lead only to the conclusion that it simply provided that a complainant whose charge is not dismissed or properly settled or litigated by the EEOC may himself bring a lawsuit, but that he must wait 180 days before dong so. After waiting for that period, the complainant may either file a private action within 90 days after EEOC notification or continue to leave the ultimate resolution of his charge to the efforts of the EEOC.

*Occidental Life Ins. Co. of Calif. v. EEOC*, 432 U.S. 355, 361 (1977) (Stewart, J., for a 7-2 majority) (considering an issue not involved here, i.e., whether the language of 42 U.S.C. § 2000e-5(b) could be read, in light of legislative history, to impose a 180-day time limit on EEOC enforcement

actions).[5] In any event, White did not merely request a right to sue letter but rather *withdrew her charges* in the first instance.[6] Merely seeking a right-to-sue letter, on its own, would have given the EEOC the choice whether to continue investigating and, perhaps, attempting conciliation. By instead withdrawing her charge, she ensured that could not happen, no matter how much time the EEOC was able or willing to devote to the matter.

Finally, White achieves nothing by merely repeating the groundless assertion that she withdrew only her MDCR charge and not her EEOC charge. The court refers White to the earlier opinion's simple observation that

> [a]long with the notice acknowledging White's request to withdraw her charge and proceed in court instead, the MDCR attached a form, entitled Information for the Charging Party-How to Obtain an EEOC Notice of Right to Sue, which clearly advised her, in pertinent part:
>
>> *This means your charge of discrimination filed with the Michigan Department of Civil Rights (MDCR) and dually filed with the Equal Employment Opportunity Commission (EEOC) will be closed,* because your intent is to sue the respondent company in federal court.

*White*, 659 F. Supp.2d at 871. White still has not explained why she should not be held to the plain language of the MDCR charge-withdrawal document just quoted.

---

5

The remainder of White's reconsideration brief makes arguments or cites documents which either were raised or should have been raised while the court was considering the defendant's dispositive motion, and do not compellingly undermine the rationale of the court's dismissal opinion in any event. *See* P's Recon Br at 7-8.

6

The court notes the D.C. Circuit's thoughtful analysis holding that the EEOC's "early right to sue" regulations at 29 C.F.R. § 1601.28(a)(2) and (a)(3) are invalid because they are inconsistent with the statutory scheme. *See Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336 (D.C. Cir. 1999) (Williams, John Rogers, Tatel), *cited by Taylor v. Small*, 350 F.3d 1286, 1294 (D.C. Cir. 2003). The court need not intimate an opinion as to these regulations' validity, to conclude that White's motion for reconsideration lacks merit. That issue is better left to our Court of Appeals in a case where its resolution is unavoidable.

**ORDER**

Plaintiff's motion for reconsideration **[doc # 41] is DENIED**.

Defendant's motion to amend/correct the judgment and opinion **[doc #42] is GRANTED**.

The Title VII claim is **dismissed WITH prejudice** for failure to exhaust administrative remedies.

The court again declines supplemental jurisdiction over any state-law claims.

An amended judgment consistent with this opinion shall issue contemporaneously.

This is a final and immediately-appealable order.

**IT IS SO ORDERED this 22nd day of March 2010**.

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge